Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADAM LAPEKES,<br><br>    Plaintiff,<br><br>    v.<br><br>APRIA, INC., JOHN G. FIGUEROA, MICHAEL AUDET, JOHN R. MURPHY, NORMAN C. PAYSON, DEVON RINKER, NEIL P. SIMPKINS, LYNN SHAPIRO SNYDER, DANIEL J. STARCK, MIKE S. ZAFIROVSKI, TERRI KLINE, and SUSANNAH GRAY,<br><br>    Defendants. | Case No:<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Adam Lapekes ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against Apria, Inc. ("Apria" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and

1

78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Apria by Owens & Minor, Inc. ("Owens & Minor").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Apria common stock.

7. Defendant Apria provides integrated home healthcare equipment and related services in the United States. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "APR."

8. Defendant John G. Figueroa ("Figueroa") is Chairman of the Board of the Company.

9. Defendant Michael Audet ("Audet") is a director of the Company.

10. Defendant John R. Murphy ("Murphy") is a director of the Company.

11. Defendant Norman C. Payson ("Payson") is a director of the Company.

12. Defendant Devon Rinker ("Rinker") is a director of the Company.

13. Defendant Neil P. Simpkins ("Simpkins") is a director of the Company.

14. Defendant Lynn Shapiro Snyder ("Snyder") is a director of the Company.

15. Defendant Daniel J. Starck ("Starck") is Chief Executive Officer and a director of the Company.

16. Defendant Mike S. Zafirovski ("Zafirovski") is a director of the Company.

17. Defendant Terri Kline ("Kline") is a director of the Company.

18. Defendant Susannah Gray ("Gray") is a director of the Company.

19. Defendants Figueroa, Audet, Murphy, Payson, Rinker, Simpkins, Snyder, Starck, Zafirovski, Kline, and Gray are collectively referred to herein as the "Individual Defendants."

20. Defendants Apria and the Individual Defendants are collectively referred to herein as the "Defendants."

<u>SUBSTANTIVE ALLEGATIONS</u>

A. The Proposed Transaction

21. On January 10, 2022, Apria and Owens & Minor announced that the companies

have entered into a definitive agreement pursuant to which Owens & Minor would acquire Apria for $37.50 in cash per share of common stock. The press release announcing the Proposed Transaction states, in pertinent part:

### Owens & Minor, Inc. Signs Definitive Agreement to Acquire Apria, Inc.

*Highly Complementary Transaction Expands Patient Direct Offering*

*Year-One Accretion Across Key Financial Metrics and Free Cash Flow Enhancement*

*Creates a Leading Platform for Future Growth*

January 10, 2022 06:00 AM Eastern Standard Time

RICHMOND, Va. & INDIANAPOLIS--(BUSINESS WIRE)--Owens & Minor, Inc. ("Owens & Minor") (NYSE: OMI) and Apria, Inc. ("Apria") (Nasdaq: APR) today announced that the companies have entered into a definitive agreement pursuant to which Owens & Minor will acquire Apria for $37.50 in cash per share of common stock, representing an equity value of approximately $1.45 billion.

\*   \*   \*

**Transaction Details**

Under the terms of the agreement, which was unanimously approved by the Board of Directors of each company, Owens & Minor will acquire Apria for $37.50 in cash per share of common stock, representing an equity value of approximately $1.45 billion, as well as the assumption of debt and cash for a total transaction value of approximately $1.6 billion.

This price per share represents a 26% and 24% premium over Apria's closing share price on January 7, 2022 and 30-day volume weighted average price, respectively.

The transaction is subject to customary closing conditions, including the Hart Scott Rodino Act and other regulatory approvals and the approval of Apria's stockholders, and is expected to close during the first half of 2022.

**Advisors**

Evercore acted as the lead financial advisor and J.P. Morgan Securities LLC acted as financial advisor to Owens & Minor in connection with this acquisition. Owens & Minor's legal advisor is Kirkland & Ellis LLP.

Goldman Sachs & Co. LLC acted as the lead financial advisor and Citigroup Global Markets Inc. acted as financial advisor to Apria in connection with the acquisition. Apria's legal advisor is Simpson Thacher & Bartlett LLP.

*   *   *

**About Owens & Minor**

Owens & Minor, Inc. (NYSE: OMI) is a global healthcare solutions company that incorporates product manufacturing, distribution support and innovative technology services to deliver significant and sustained value across the breadth of the industry – from acute care to patients in their home. Aligned to its Mission of Empowering Our Customers to Advance Healthcare$^{TM}$, more than 15,000 global teammates serve over 4,000 healthcare industry customers. A vertically-integrated, predominantly Americas-based footprint enables Owens & Minor to reliably supply its self-manufactured surgical and PPE products. This seamless value chain integrates with a portfolio of products representing 1,200 branded suppliers. Operating continuously since 1882 from its headquarters in Richmond, Virginia, Owens & Minor has grown into a FORTUNE 500 company with operations located across North America, Asia, Europe and Latin America. For more information about Owens & Minor, visit owens-minor.com follow @Owens_Minor on Twitter and connect on LinkedIn at www.linkedin.com/company/owens-&-minor.

**About Apria**

Apria, Inc. (Nasdaq: APR) is a leading provider of integrated home healthcare equipment and related services in the United States. Apria offers a comprehensive range of products and services for in-home care and delivery across three core service lines: (1) home respiratory therapy (including home oxygen and non-invasive ventilation ("NIV") services); (2) obstructive sleep apnea ("OSA") treatment (including continuous positive airway pressure ("CPAP") and bi-level positive airway pressure devices, and patient support services); and (3) negative pressure wound therapy ("NPWT"). Additionally, Apria supplies a wide range of home medical equipment and other products and services to help improve the quality of life for patients with home care needs. Apria's revenues are generated through fee-for-service and capitation arrangements with third-party healthcare payors, including government and commercial payors ("Payors") for equipment, supplies, services and other items we rent or sell to patients. Through its offerings, Apria also provides patients with a variety of clinical and administrative support services and related products and supplies, most of which are prescribed by a physician as part of a care plan. Apria is focused on being the industry's highest-quality provider of home healthcare equipment and related services, while maintaining its commitment to being a low-cost operator. Apria serves over 2 million patients annually and offers a compelling value proposition to patients, providers and Payors by allowing patients to receive necessary care and services in

the comfort of their own home, while, at the same time, reducing the costs of treatment. Learn more at www.apria.com.

23. On February 22, 2022, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

23. The Proxy Statement, which recommends that Apria shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Apria's financial projections; (ii) the financial analyses performed by Apria's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Apria's additional financial advisor, Citigroup Global Markets Inc. ("Citi").

24. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Apria Board and Reasons for the Merger; (ii) Opinion of Apria's Financial Advisor; and (iii) Certain Financial Projections.

25. Unless and until the material misstatements and omissions (referenced below) are remedied before the March 24, 2022 shareholder vote on the Proposed Transaction, Apria shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

#### 1. Material Omissions Concerning Apria's Financial Projections

26. The Proxy Statement omits material information concerning Apria's financial projections.

6

27. With respect to Apria's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the projections; (2) Apria's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

28. The Proxy Statement also fails to disclose the "Corrected Forecasts" that were provided to, and relied upon by, Goldman Sachs in connection with its analyses and fairness opinion.

29. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Apria and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

30. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R.

§ 244.100.[1]

31. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Goldman Sachs' Analyses

32. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Goldman Sachs.

33. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the (i) multiples ranging from 9.5x to 11.5x, and (ii) illustrative discount rate of 8.8%; (2) the net debt of Apria as of September 30, 2021; (3) the number of fully-diluted shares of Apria common stock outstanding as of January 5, 2022; (4) the future share prices of Apria as of September 30, 2021, September 30, 2022 and September 30, 2023, respectively; and (5) the future enterprise values of Apria as of September 30 for each of fiscal years 2021, 2022 and 2023.

34. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.5% to 9%, (ii) perpetuity growth rates ranging from 0.0% to 2.0%, and (iii) multiples ranging from 5.5x to 9.2x; (2) the terminal values of the

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Mar. 11, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

8

Company; (3) Apria's net operating losses for the fourth quarter of fiscal year 2021 through the end of fiscal year 2031; (4) the net debt of Apria as of September 30, 2021; and (5) the number of fully-diluted shares of Apria common stock outstanding as of January 5, 2022.

35. With respect to Goldman Sachs' "*Premia Paid Analysis*," the Proxy Statement fails to disclose the transactions observed and the premiums paid therein.

36. The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Goldman Sachs' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

37. Without the information described above, the Company's shareholders are unable to fully understand Goldman Sachs' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3. Material Omissions Concerning Potential Conflicts of Interest Involving Citi**

38. The Proxy Statement omits material information concerning potential conflicts of interest involving Citi.

39. The Proxy Statement fails to disclose the following concerning Citi: (1) the amount of compensation Citi has received or will receive in connection with its engagement by the Company; (2) the amount of Citi's compensation that is contingent upon consummation of the Proposed Transaction; and (3) whether Citi has performed past services for any parties to the Proposed Transaction and/or their affiliates, including the timing and nature of those services and the amount of compensation received or expected to receive for providing such services.

40. The Proxy Statement also fails to disclose the financial analyses performed by Citi, as applicable.

41. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on the advisor's work.

42. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

45. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and

misleading Proxy Statement.

46. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

47. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

48. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

49. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned

company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

53. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: March 11, 2022                            Respectfully submitted,

                                                               **HALPER SADEH LLP**

                                                               /s/ Daniel Sadeh
                                                               Daniel Sadeh, Esq.
                                                               Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                               667 Madison Avenue, 5th Floor
                                                               New York, NY 10065
                                                               Telephone: (212) 763-0060
                                                               Facsimile: (646) 776-2600
                                                               Email: sadeh@halpersadeh.com
                                                                                  zhalper@halpersadeh.com

*Counsel for Plaintiff*

14